UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

TERRELL BEAN                                    CIVIL ACTION NO. 10-852-LC
   #510917
                                                SECTION P
VERSUS
                                                JUDGE TRIMBLE

TONY MANCUSO, ET AL                             MAGISTGRATE JUDGE   KAY

<u>REPORT AND RECOMMENDATION</u>

Before the court is the *pro se* civil rights complaint filed in *forma pauperis* by plaintiff, Terrell M. Bean, on May 24, 2010.  At the time he filed this complaint, plaintiff was an inmate or pre-trial detainee in the custody of Louisiana's Department of Public Safety and Corrections (LDOC).  He was housed in the Calcasieu Correction Center (CCC), Lake Charles, Louisiana.  However, plaintiff has filed a change of address notification with the court indicating that he was subsequently transferred.

Plaintiff's claims herein center ON conditions of confinement.  More specifically, he states that medical and religious reasons require him to have a vegetarian meal but that he has been denied same.  He names the following as defendants herein: Calcasieu Sheriff Tony Mancuso; CCC "Commander" Vic Salvador; CCC Warden Burkhalter; CCC Chaplin Brown; and, CCC Nurse Practitioner Carol Thorton.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted.

1

**Background**

Plaintiff states that defendants Brown and Thorton repeatedly refused his request for approval of a vegetarian diet.  Plaintiff claims that he needed a vegetarian diet because he has stomach problems and because of his religious requirements.

Plaintiff attached numerous grievances filed at the correctional center concerning this issue.  The responses to his grievances stated that research into plaintiff's religion found that it did not require abstaining from meat.  Rather a diet free from meat was only required by those fulfilling certain vows, such as "dreadlock priesthood."  (Doc. 1, p.10.)  CCC officials were not swayed by plaintiff's attestations that he was fulfilling those vows.

Plaintiff claims that his health has deteriorated as a result of not being provided a vegetarian diet, including loss of weight and having headaches.  Plaintiff states that defendant Thorton told him that he was the ideal weight for his height and did not otherwise provide medical care to him.  As to defendants Mancuso, Salvador, and Burkhalter, plaintiff claims they have not properly trained their subordinates and have ignored his pleas for help.

As relief for the above, plaintiff seeks compensatory damages for mental anguish, for medical neglect, for the failure to train subordinates and for the failure to intervene and protect plaintiff's constitutional rights.  Plaintiff also seeks injunctive relief, namely, providing him with the requested vegetarian meal and medical care, and restraints against defendants from physically and mentally abusing him.

**Law and Analysis**

*1.  Screening*

When a prisoner, such as plaintiff, seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and

dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915(e)(2).; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint, the memorandum in support, and the accompanying exhibits detail both the broad contours and the specifics of his claim for relief. He has pleaded his best case and need not be afforded further opportunities to amend.

### 2.   Claims

Plaintiff's complaint fails to show a violation of his constitutional rights, including his claim for denial of medical care. The standard to apply in analyzing a denial of medical care claim asserted by a detainee depends upon whether the claim is directed to a "condition of

confinement" or to an "episodic act or omission."  *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996).  The Fifth Circuit has analyzed a case involving the alleged denial of adequate medical care to an arrestee under the episodic act standard.  *Nerren v. Livingston Police Dept.,* 86 F.3d 469 (5th Cir. 1996).  Under this standard, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights."  *Id.* at 473. This is the same standard applicable to convicted prisoners, that is, the denial or delay of medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Thus, the plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials.  *Hare*, 74 F.3d at 643 and 650.

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-59 (5th Cir. 2001).  "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference."  *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997).

4

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs.  See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).  In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act.  Prisoners are not constitutionally entitled to the best medical care that money can buy.  See *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.*  Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred.  *Mayweather, supra.*

In the instant case, the information contained in plaintiff's complaint shows that plaintiff received medical treatment.  Plaintiff's allegations, at most, state a disagreement between him and the medical staff regarding what was needed to treat his alleged medical problems he claimed resulted from not being given a proper vegetarian diet.  As previously stated, claims such as those made by plaintiff are insufficient to establish that a constitutional violation has occurred.

Absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison.  See *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).  The decision regarding plaintiff's treatment is best left to the prison officials.  The facts of this matter clearly do not demonstrate that the defendants refused to treat him, ignored his

complaints, intentionally treated plaintiff incorrectly or evince a wanton disregard for plaintiff's medical needs.  The evidence before the court simply does not support a finding of deliberate indifference.

Accordingly, this court finds that plaintiff's medical care claims should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

### 3.  *Complaints*

With regard to the complaints that he has been denied a vegetarian diet, plaintiff's claims fare no better.

Dietary issues are clearly related to legitimate penological interests in providing proper nutritious meals to all the prisoners without undue cost.  *Baranowski v. Hart*, 486 F.3d 112 (5th Cir.2007) (holding that prison officials failure to provide kosher meals did not violate inmates free exercise rights).  The Fifth Circuit has held that the first factor in the *Turner*[1] test, whether there is a rational relationship between the regulation and the legitimate government interest advanced, is the controlling question, and the other factors merely help a court determine if the connection is logical.  *Scott v. Miss. Dep't of Corr.*, 961 F.2d 77, 81 (5th Cir.1992) (commenting that neither *Turner* nor *O'Lone* require courts to weigh evenly, or even consider the other three factors).  Thus, the dietary complaints are clearly frivolous under established Fifth Circuit and

---

[1]The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it is reasonably related to legitimate penological interests.  The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry:  (1) is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice;  (2) are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level;  (3) what impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and  (4) are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests?  *Turner v. Safley*, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000).  Each factor need not be considered, and the factors need not be evaluated evenly.  *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Supreme Court jurisprudence.

### 4. *Supervisor Liability and Grievances*

In addition to defendants Thorton and Brown, plaintiff names CCC Warden Burkhalter, CCC Commander Vic Salvador, and Sheriff Mancuso as his defendants. To the extent that he names these defendants in a supervisory capacity, such claim is not cognizable as it is well settled that supervisory officials may not be held liable under §1983 under the doctrine of *respondeat superior*. See *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993).

To be liable under §1983, supervisory officials must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Here, plaintiff fails to set forth a constitutional claim against these parties. There are no allegations that they were personally implicated in any alleged constitutional deprivation or that they implemented any policy which acts as a constitutional deprivation. Thus, these claims should be dismissed for failure to state a claim upon which relief may be granted.

Further, to the extent that plaintiff complains that these defendants did not respond to his grievances, plaintiff should be aware that such allegations do not implicate the constitution. More specifically, "when the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right to access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Oladipupo v. Austin*, 104 F. Supp.2d 626, 637, (W.D. La. 2000) (citing, *Flick v.*

*Alba, et al,* 932 F.2d 728, 729 (8th Cir. 1991).  The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally protected  right to have his complaints and grievances investigated and resolved.  Inasmuch as the result of these complaints and grievances have no bearing on the duration of plaintiff's confinement, plaintiff cannot show the existence of a state created liberty interest in their investigation and ultimate resolution.  See *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995).

In sum, as plaintiff  does not have a constitutional right to have his grievances entertained, it follows that these defendants did not have a duty to take action with regard to plaintiff's grievances.  Consequently, any argument by plaintiff that the failure answer or properly respond to his grievances violates his constitutional rights, lacks an arguable basis in law and should be dismissed as frivolous as such claims are not cognizable under §1983**.**

5. ***Injunctive Relief***

As detailed above, plaintiff seeks certain measures of injunctive relief as a result of defendants' alleged actions.  However, as previously stated, plaintiff has been transferred from CCC and is apparently housed at the Jackson Parish Correctional Center in Jonesboro, Louisiana. Therefore, without evidence to the contrary, his request for injunctive relief is moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot.  *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (holding that prisoner transferred out of offending institution could not state a

claim for injunctive relief).  In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to CCC would make his claims capable of repetition yet evading review.  See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975).  Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CCC.  *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982).  At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition.  *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Even under the most permissive interpretation, plaintiff's complaint does not, and cannot, meet that standard.  Simply put, plaintiff has been transferred from the custody of CCC and his request for injunctive relief is moot.

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 17th  day of June, 2011.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE